UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
TRUSTEES OF THE NORTHEAST CARPENTERS  :
HEALTH, PENSION, ANNUITY, APPRENTICESHIP, :
AND LABOR MANAGEMENT COOPERATION : <u>MEMORANDUM</u>
FUNDS, : <u>& ORDER</u>
 : 18-CV-05948 (SMG)
                           Petitioners, :
 :
  -against- :
 :
GABE CONSTRUCTION & DEVELOPMENT CORP., :
 :
                          Respondent. :
------------------------------------------------------------------ x

GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

      Petitioners, Trustees of the Northeast Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Management Cooperation Funds ("Petitioners" and/or the "Funds"), bring this action pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, to confirm an arbitration award. Petition to Confirm an Arbitration Award ("Petition") at 1, Dkt. 1. The award required Respondent Gabe Construction & Development Corporation ("Respondent") to pay Petitioners $24,203.50. *Id.* ¶ 25. In addition to the amount awarded by the arbitrator, Petitioners seek to recover interest on the arbitration award and the attorneys' fees and costs they incurred bringing this action.

      Petitioners now move for summary judgment against Respondent. Dkt. 21. Respondent opposes Petitioners' motion by arguing that it was not properly served with notice of Petitioners'

intent to arbitrate, and requests that the arbitration award be vacated and the dispute remanded for arbitration *de novo*. Mem. of Law in Opp. to Summ. J. ("Mem. Opp.") at 3, Dkt. 28.

The case has been assigned to me for all purposes with the consent of the parties, Dkt. 18, and I therefore rule on Petitioners' motion by Memorandum and Order rather than by issuing a Report and Recommendation. For the following reasons, Petitioners' motion is granted.

## FACTUAL BACKGROUND[1]

As early as December 2003, Respondent entered into a collective bargaining agreement ("CBA") with the New England Regional Council of Carpenters (the "Union"). Petitioners' Statement of Facts Pursuant to Local Civil Rule 56.1 ("SOF") ¶ 4, Dkt. 26; Declaration of William Banfield ("Banfield Decl.") ¶ 4, Dkt. 22. In February 2007, Respondent extended its agreement with the Union from 2007 to 2010, SOF ¶ 5, then from 2010 to 2011, *id.* ¶ 6, and ultimately from 2011 to 2016, *id.* ¶ 7. Both the 2010-2011 agreement and the 2011-2016 agreement required Respondent to make contributions to the Funds for all work performed within the jurisdiction of the Union. *Id.* ¶ 13; Banfield Decl. ¶ 10. Respondent's failure to make such payments subjected it to liability under the CBA for delinquent contributions and collection costs, including auditing and attorneys' fees. SOF ¶ 12; Banfield Decl. ¶ 12.

The 2010-2011 and 2011-2016 CBAs also provided that "[t]he Employer shall be bound by and shall comply with the agreements, declarations of trust, plans and/or regulations of the fringe benefit funds, and the labor management cooperation committees, so designated." SOF ¶ 11; Declaration of Kim Tompuri ("Tompuri Decl.") ¶ 6, Dkt. 23. Thus, Respondent was bound

---

[1] The facts set forth in the text are taken from Petitioners' Statement of Facts Pursuant to Local Civil Rule 56.1 ("SOF"), Dkt. 26, as well as from three affidavits submitted by Petitioners in support of their motion for summary judgment, Dkt. 22, 23, 24. Respondent has failed to submit a corresponding 56.1 statement, with the result that the facts in Petitioners' Rule 56.1 Statement are deemed admitted. *See* Local Civil Rule 56.1(c). In any event, the parties' differences relate to legal requirements rather than the underlying facts, about which there is apparently no genuine dispute.

by the Collection Policy established by Petitioners. SOF ¶ 13; Tompuri Decl. ¶ 7; Employer Contribution Audit and Collection Policy ("Collection Policy), Dkt. 23-1. The Collection Policy provides that any claim by the Funds that an employer has failed to remit required contributions is subject to arbitration before the Funds' designated arbitrator. SOF ¶ 19; Tompuri Decl. ¶ 13. The Collection Policy also grants the Funds discretion to conduct payroll audits of employers to determine whether all required contributions have been paid. SOF ¶ 14; Tompuri Decl. ¶ 8.

The Funds conducted an audit with respect to Respondent covering the period from January 1, 2011 to January 31, 2016. SOF ¶ 17; Tompuri Decl. ¶ 11. The audit revealed that Respondent had failed to remit contributions of $9,903.52. SOF ¶ 18; Tompuri Decl. ¶12.

To collect the amount due, the Funds initiated arbitration as provided for in the Collection Policy by mailing a notice of intent to arbitrate delinquency to Respondent by certified mail. SOF ¶ 21; Tompuri Decl. ¶ 15. Although a hearing was scheduled, Respondent failed to appear. Findings of Audit, Collection Award and Order ("Award") at 1, Dkt. 23-3. The arbitrator, relying on the evidence presented by Petitioners, proceeded to issue an award in favor of Petitioners on March 12, 2018. *Id.* The amount awarded totaled $24,203.50, consisting of a principal deficiency of $9,903.52, interest of $4,474.28, liquidated damages of $1,980.70, audit costs of $6,195, attorneys' fees of $900, and the arbitrator's fee of $750. SOF ¶ 24; Award ¶ 12. Petitioners served Respondent with a copy of the award on or about July 16, 2018. Declaration of Nicole Marimon ("Marimon Decl.") ¶ 2, Dkt. 24. The award has not been vacated, modified, or corrected. *Id.* ¶ 3.

## DISCUSSION

### I. Arbitration Award

*A. Confirmation of an Arbitration Award*

Summary judgment "shall [be] grant[ed] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The Court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted). Here, as noted above, the relevant facts are not in dispute; rather, the disagreement between the parties concerns the legal consequences of those undisputed facts.

*B. Confirmation of an Arbitration Award*

The burden on a petitioner seeking to confirm an arbitration award "is not an onerous one." *Finkel v. Pomalee Elec. Co.*, 2018 WL 1320689, at *5 (E.D.N.Y. Feb. 22, 2018), *report and recommendation adopted*, 2018 WL 1318997 (E.D.N.Y. Mar. 14, 2018). Confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citing *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984)). "In this limited role, a court must confirm an arbitration award as long as it draws its essence from the collective bargaining agreement and is not the arbitrator's own brand of industrial justice." *Trs. Of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. v. CEI Contractors, Inc.*, 2019 WL 117603, at *3 (E.D.N.Y. Jan. 7, 2019) (citing *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338, Affiliated with the Retail, Wholesale &*

*Dep't Store Union, AFL–CIO*, 118 F.3d 892, 896 (2d Cir. 1997) (internal quotation marks omitted)). The arbitrator's reasoning "need not be explained and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair*, 462 F.3d at 110 (internal quotation marks and citation omitted). "[I]mprovident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the [arbitrator's] award." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (internal quotation marks and citation omitted).

### C. The Arbitration Award

Here, Petitioners' award clearly "draws its essence" from the underlying CBA and Collection Policy. The arbitrator found that Respondent "violated the terms of the agreement by failing to make its required contributions to the funds between January 2011 through January 31, 2016," Award ¶ 6, and awarded Petitioners a total of $24,203.50, *id.* at 4. The finding is consistent with the audit initiated by Petitioners under the Collection Policy, which determined that Respondent failed to remit contributions due and owing in the amount of $9,903.52 from January 1, 2011 to January 30, 2016. SOF ¶¶ 17–18. Each additional component of the award, including interest of $4,474.28, liquidated damages of $1,980.70, audit costs of $6,195, attorneys' fees of $900, and an arbitrator's fee of $750, was contemplated in advance by the Collection Policy. Award at 3–4; Collection Policy § 4.8. Accordingly, nothing about the award itself warrants denying Petitioners' motion to confirm.

### D. Notice of Intent to Arbitrate

Respondent does not object to the substance of the arbitration award, but rather to the method by which Petitioners provided notice of their intent to arbitrate. Mem. Opp. at 1–2. Specifically, Respondent's counsel contends that *he* was communicating with Petitioners'

5

counsel on behalf of Respondent, and that Petitioners therefore should have sent notice of their intent to arbitrate to him rather than directly to Respondent itself. *Id.*; Declaration of Barry N. Birnbaum ("Birnbaum Decl.") ¶¶ 5–6, 9, Dkt. 27. Mr. Birnbaum contends that, had he been notified of the arbitration hearing, Respondent would not have defaulted. Letter from Barry Birnbaum to Charles S. Virginia (July 27, 2018), Dkt. 27-3.

Respondent's argument concerning service of Petitioners' notice of intent to arbitrate is unavailing. As an initial matter, the Collection Policy suggests that notice is properly served upon the employer itself. The policy states as follows:

> If the delinquent Contributions are not received within 20 days following the date of the notice described in Section 2.1(F), the Fund Office shall prepare a Notice to Arbitrate before the Funds' designated arbitrator. The Notice to Arbitrate shall be signed by the Northeast Carpenters Funds' Director [] or Collections Coordinator on behalf of the Trustees. A sample Notice to Arbitrate is set forth as Exhibit D.

Collection Policy § 2.3(A). The sample Notice to Arbitrate begins "Dear Employer" and includes instructions stating that it is "[t]o be sent by the Fund Office to the Employer." Collection Policy, Exhibit D. The most recent CBA similarly provides that requests for arbitration are to be sent to "the other party." CBA for July 1, 2011 through May 31, 2016 ("2016 CBA"), Art. 4(a)(4), Dkt. 1-6.

Although they do not apply to the notice at issue here, it bears noting that the Federal Rules of Civil Procedure nowhere provide for service upon an attorney, even when a party bringing a lawsuit is aware that the party to be sued has counsel. Rather, Federal Rule of Civil Procedure 4 provides for service on a corporation "by delivering a copy of the summons and of the complaint *to an officer, a managing or general agent*, or any other agent authorized by appointment or by law to receive service of process," Fed. R. Civ. P. 4(h)(1) (emphasis added), or in accordance with state law where the district court is located, Fed. R. Civ. P. 4(e)(1).

The New York Civil Procedure Rules ("CPLR") do include a section specifically addressed to service of a notice of intention to arbitrate. CPLR 7503(c) provides that a notice of intent to arbitrate "*shall* be served in the same manner as a summons or by registered or certified mail, return, receipt requested." CPLR 7503(c) (emphasis added). Service of a summons on a corporation is governed by CPLR 311(a)(1) which, not unlike Fed. R. Civ. P. 4(h)(1), provides that "personal service upon a corporation…shall be made by delivering the summons…*to an officer, director, managing or general agent*, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." (emphasis added). A notice of intent to arbitrate must also specify "the agreement pursuant to which arbitration is sought," provide "the name and address of the party serving the notice," and state "that unless the party served applies to stay arbitration within twenty days after such service he shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time." CPLR 7503(c). The New York Rules also specifically address when service should be made upon a party's attorney; CPLR 2103(b) provides that service shall be made upon a party's attorney "in a pending action." Clearly, there was no action pending when Petitioners served their notice of intent to arbitrate.

Petitioners' notice of intent to arbitrate thus complied with the CPLR, and therefore the Federal Rules as well. Petitioners served Respondent with a notice of intent to arbitrate by mailing a notice to arbitrate delinquency to Respondent by certified mail. SOF ¶ 21. The notice included Petitioners' name and address, referenced the relevant trust agreements and plans and Collection Policy, and alerted Respondent to the twenty-day window for seeking a stay. Notice of Intent to Arbitrate Delinquency, Dkt 23-2.

Even if Petitioners were required to serve Respondent's counsel, Respondent's attempt to vacate the arbitration award on that basis would be untimely. "For enforcement of arbitration awards pursuant to a collective bargaining agreement…CPLR § 7511(a) provides the most appropriate New York state statute of limitations." *Loc. 802, Associated Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d. 85, 88 (2d Cir. 1998). Section 7511(a) states that a party seeking to vacate or modify an arbitration award must apply for relief within ninety days of receiving the award.[2] Even where the method of notice of the intent to arbitrate is challenged, but "Respondent had at minimum constructive notice of the arbitration award and failed to timely contest the award, the Court is constrained from vacating the award." *Tr. Of N.Y.C. Dist. Council of Carpenters Pension Fund v. High Performance Floors Inc.*, 2016 WL 3194370, at *5 (S.D.N.Y. June 6, 2016).

Here, Respondent had actual notice—not merely constructive notice—of the arbitration award more than ninety days before raising any challenge to it. Respondent's counsel, Mr. Birnbaum, sent a letter on July 27, 2018, to Petitioners' counsel stating that the award was received by Respondent on July 19, 2018. Letter from Barry Birnbaum to Charles S. Virginia (July 27, 2018). Respondent, though, made no application to vacate or modify the award during the following ninety days.

Finally, it is worth noting that there is no basis for concluding that Petitioners acted in bad faith when they served their notice upon Respondent rather than its counsel. Respondent's reliance on *Empire Mut. Ins. Co. v. Levy,* 35 A.D.2d 916 (1st Dep't 1970), where the court

---

[2] New York state courts have held that "[d]espite this 90-day limit, a party may wait and make his arguments for vacating or modifying the award in opposition to an application to confirm the award, even when that application to confirm is made beyond the 90-day period." *Karlan Const. Co. v. Burdick Assocs. Owners Corp.*, 166 A.D.2d 416, 417 (2d Dep't 1990). The Second Circuit, however, explicitly rejected this interpretation in *Loc. 802, Associated Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d. 85, 88–89 (2d Cir. 1998), reasoning that strict adherence to the 90-day limitation promoted "the important federal interests of promoting resolution of labor conflicts quickly and effectively though arbitration."

8

concluded that notice was deliberately sent to an outlying office in Rockville Centre after communicating only with the party's New York office, is therefore misplaced.

  E. *Pre-Judgment Interest*

In addition to the sum awarded at arbitration, Petitioners request "interest from the date of the Award through the date of judgment." Petition at 7. "Whether to award prejudgment interest in an action to confirm an arbitration award is in the discretion of the trial court, but there is a presumption in favor of prejudgment interest." *Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Cooperation Funds v. W.B.E. Walls & Ceilings, Inc.*, 2019 WL 2079825, at *3 (E.D.N.Y. May 10, 2019) (citing *N.Y.C. Dist. Council of Carpenters v. Gen-Cap Indus., Inc.*, 2012 WL 2958265, at *4 (S.D.N.Y. July 20, 2012)). That presumption generally prevails when the CBA provides that arbitration awards shall be "final and binding." *See, e.g., Bldg. Material Teamsters Local 282 v. A Star Bus. Servs. of N.Y. Corp.*, 2012 WL 3568262, at *6 (E.D.N.Y. May 30, 2012), *report and recommendation adopted*, 2012 WL 3230481 (E.D.N.Y. Aug. 6, 2012). Here, the CBA provides that "[t]he decision of the Arbitrator shall be final and binding on all parties concerned," making an award of pre-judgment interest appropriate. 2016 CBA, Art. 4(a)(4).

Though the "LMRA is silent with respect to a pre-judgment interest rate[,]…the common practice among courts within this Circuit is to grant interest at a rate of 9% per annum under New York State law." *Bldg. Material Teamsters*, 2012 WL 3568262, at *6 (internal quotation marks and citations omitted); *see also W.B.E. Walls & Ceilings, Inc.*, 2019 WL 2079825, at *3. Accordingly, Petitioners are awarded interest on the arbitration award at a rate of 9% per year, or 0.75% per month, from the date of the arbitration award through the date final judgment is entered.

## II. Attorneys' Fees and Costs

*A. Attorneys' Fees*

Parties in actions brought under ERISA to recover delinquent contributions are entitled to recover reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2)(D); *CEI Contractors*, 2019 WL 117603, at *4. That entitlement does not necessarily extend to petitions to confirm an arbitration award, though courts will award fees against a party who has refused to abide by an arbitration award without justification. *Id.* Here, the Collection Policy resolves any question of whether Petitioners are entitled to recover the attorneys' fees they incurred bringing this confirmation action. *Id.* It provides that attorneys' fees "shall be due to the Fund from a delinquent employer at the hourly rate charged to the Fund for all time spent by Counsel in collection efforts pursuant to Article III [Legal Action and Settlement]." Collection Policy, § 6.2. Thus, the only issue to resolve is whether Petitioners' attorneys' fees are reasonable.[3]

"Attorneys' fees are awarded by determining a presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours. The reasonable hourly rate should be what a reasonable, paying client would be willing to pay." *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 289 (2d Cir. 2011) (internal quotation marks and citation omitted). The Second Circuit's forum rule also "generally requires use of 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Id.* at 290 (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)).

---

[3] Literally construed, the passage from the Collection Policy quoted in the text arguably entitles Petitioners to attorneys' fees at the hourly rate charged by counsel to the Fund regardless of the reasonableness of that rate. Petitioners, though, seek only "reasonable attorneys' fees and costs." Petitioners' Mem. in Supp. of Summ. J. at 7–10, Dkt 25.

"Courts in the Eastern District of New York have approved hourly rates ranging from $200 to $400 per hour for partners, $200 to $300 per hour for senior associates, $100 to $200 per hour for more junior associates, and $85 to $100 per hour for paralegals." *N.Y.C. Dist. Council of Carpenters v. Trs. of N.Y.C. Dist. Council of Carpenters Welfare Fund*, 2018 WL 3768586, at *3–*5 (E.D.N.Y. July 23, 2018), *report and recommendation adopted sub nom. Trs. of N.Y.C. Dist. Council of Carpenters Welfare Fund v. Best Made Floors, Inc.*, 2018 WL 3785331 (E.D.N.Y. Aug. 8, 2018) (awarding an hourly rate of $300 to a partner with more than 20 years of experience; an hourly rate of $200 to "of counsel" with less than five years of experience; and, an hourly rate of $90 to legal assistants); *see also CEI Contractors*, 2019 WL 117603, at *6 (reducing the hourly rate from $225 to $200 for an associate who graduated four years earlier who "had handled the prosecution of numerous ERISA collection actions"); *Trs. of Local 7 Tile Indus. Welfare Fund v. Larsen Marble & Tile, LLC,* 2018 WL 6363923, at *6 (E.D.N.Y. Nov. 19, 2018) (reducing the hourly rate for associate who graduated four years earlier from $265 to $200 and reducing the hourly rate for legal assistants from $115 to $90). Courts have awarded associates more than $200 per hour only if they have many years of experience. *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ges Bake Shop, Inc.,* 2014 WL 1159821, at *9–10 (E.D.N.Y. Mar. 6, 2014) (awarding $275 per hour to associate attorneys who had graduated from law school 14 and 16 years prior).

Petitioners request a total of $8,330 of attorneys' fees for 34.5 hours of lawyer and paralegal time spent on this case. Petitioners' Mem. of Law in Further Supp. of Summ. J. at 6, Dkt. 30; Declaration of Nicole Marimon in Further Supp. ("Supp. Marimon Decl.") ¶ 12, Dkt. 29. As required by *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983), Petitioners have submitted an attorney affidavit and contemporaneous time

records detailing the attorneys, dates, hours, and type of work done. Supp. Marimon Decl. Ex. C, Invoice dated May 24, 2019 ("Invoice"), Dkt. 29-3.

Petitioners were represented by attorneys with varying levels of experience from Virginia and Ambinder, LLP ("V&A"). Supp. Marimon Decl. ¶¶ 5–8.

Nicole Marimon graduated from Fordham University School of Law in 2014. Supp. Marimon Decl. ¶ 5. She has "regularly served as lead counsel and represented multiemployer employee benefit plans in ERISA litigation" since being admitted to the bar. After February 2019, during the course of this litigation, her hourly rate increased from $225 to $300. Given her experience as an associate, I find her hourly rate of $225 appropriate. However, as a new partner, $300 seems high, especially given that a partner with over twenty years of experience was awarded this amount in *N.Y.C. Dist. Council of Carpenters,* 2018 WL 3768586, at *3 (E.D.N.Y. July 23, 2018). Thus, her $300 hourly rate is reduced to $275.

John Harras graduated from St. John's University Law School in 2015 and is an associate at V&A. Supp. Marimon Decl. ¶ 6. Accordingly, the $225 hourly rate sought by Petitioners is reduced to $200.

Kelly Malloy is also an associate at V&A. Malloy graduated from Brooklyn Law School only one year ago, in 2018. Supp. Marimon Decl. ¶ 7. Given her limited experience, her hourly rate is reduced from $225 to $175.

Martin C. Fojas is a former partner at V&A who graduated from Brooklyn Law School in 2009. Supp. Marimon Decl. ¶ 8. Since he is a former partner with ten years of experience, I find the $300 rate sought by Petitioners to be appropriate.

Finally, Petitioners seek $100 per hour of work completed by legal assistants. In light of the recent holdings cited above, I conclude that the hourly rate of $100 should be reduced to $90.

12

Once it determines appropriate hourly rates, the court reviews "the reasonableness of the hours billed," ensuring that the amount of time billed is not "excessive, redundant, or otherwise unnecessary." *Trs. of Local 7 Tile Indus.,* 2018 WL 6363923, at *7 (quoting *Bourgal v. Atlas Transit Mix,* 1996 WL 75290, at *7 (E.D.N.Y. Feb. 7, 1996)). Having reviewed the invoice, I find that the number of hours billed for the work performed is reasonable. Applying the reduced hourly rates stated above to the hours listed in the invoice yields a total award of $7,766.50 in attorneys' fees.

B. Costs

"Courts routinely make awards [for costs] pursuant to [ERISA] in confirmation proceedings." *Abondolo v. Jerry WWHS Co., Inc.*, 829 F. Supp. 2d 120, 130 (E.D.N.Y. Dec. 1, 2011) (quoting *Laundry, Dry Cleaning Workers & Allied Indus. Health Fund v. Stainless Partners, Inc.*, 2007 WL 3232260, at *4 (E.D.N.Y. Oct. 31, 2007) (collecting cases)). Courts will "generally award those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Pennacchio v. Powers*, 2011 WL 2945825, at *2 (E.D.N.Y. 2011) (quoting *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). Those expenses include travel and photocopying as "distinguished from non-recoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate." *Id*. (quoting *Kuzma v. I.R.S.*, 821 F.2d 930, 933–34 (2d Cir. 1987)). Here, Petitioners request reasonable court filing and service fees as well as travel expenses and Lexis Nexis and Courtlink fees. Invoice at 6. These costs, totaling $509.38, are therefore awarded.

## CONCLUSION

For the above reasons, Petitioners' motion for summary judgment is granted, and the arbitration award is confirmed. Judgment shall be entered in favor of Petitioners in the amount awarded by the arbitrator, $24,203.50, together with interest at the rate of 9% per annum accruing from the date of the arbitration award through the date final judgment is entered. In addition, Petitioners are awarded $8,275.88 in attorneys' fees and costs incurred in connection with this confirmation proceeding.

SO ORDERED.

/s/
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
December 10, 2019

U:\#ECC 2019-2020\18-5948 Gabe Construction\Gabe Construction SJ Order SMG FINAL.docx